## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RITA SERRANO RAMIREZ | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No.: |
| | ) |
| TESLA INDUSTRIES, INC., a Delaware | ) |
| Corporation | ) JURY TRIAL DEMANDED |
| | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

1.  This action arises to remedy discrimination on the basis of sex in the terms, conditions and privileges of employment pursuant to the provisions of Title VII of the Acts of Congress known as the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII").

2.  The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 1343.

3.  Venue lies in this judicial district since all acts alleged herein occurred within the District of Delaware.

## PARTIES

4.  Plaintiff, Rita Serrano Ramirez, (also known as "Rita Serrano", and formerly known as "Rita Serrano Ramirez Gomez"), is a female citizen of the United States and currently resides at 8600 Woodland Court, Alexandria, Virginia, 22309.

.

5.      Defendant, Tesla Industries, Inc., is a Delaware Corporation with its principle place of business located at 101 Centerpoint Boulevard, New Castle, Delaware. Defendant designs, manufactures, tests, and supports power conversion systems. Defendant's Registered Agent for service of process is Reger, Rizzo & Darnall, LLP, 1523 Concord Pike, Suite 200, Brandywine Plaza East, Wilmington, Delaware, 19803.

6.      At all times relevant hereto, Defendant, has been an employer as defined in § 701(b)(g)(h) of the Civil Rights Act, 42 U.S.C. § 2000(b)(g)(h), in that Defendant's operations effect commerce and Defendant has employed at least fifteen (15) persons.

7.      Upon information and belief, at all times relevant hereto Defendant employed approximately 78 employees.


## FACTS COMMON TO ALL COUNTS

8.      At all times relevant hereto, Defendant's owner and Chief Executive Officer ("CEO") was David Masilotti, Sr.

9.      At all times relevant hereto, Defendant's Human Resources ("HR") Manager and Assistant to the CEO, was David Masilotti Sr.'s daughter, Megan Masilotti.

10.     At all times relevant hereto, David Masilotti, Jr., son of David Masilotti, Sr., was a management employee of Defendant.  David Masilotti, Jr. was known as "DJ".

11.     At all times relevant hereto, Roberto Morales, (hereinafter "Morales") was

Defendant's General Manager. In that capacity, Morales had authority to hire, fire, and discipline employees.

12. Plaintiff began her employment with Defendant on or about August 29, 2016. Plaintiff was interviewed and hired by Morales. Plaintiff's job responsibility was to build electrical circuit boards.

13. Morales was Plaintiff's Supervisor. Plaintiff was trained by Morales. After circuit boards were completed, they had to be taken to Morales for testing.

14. Throughout Plaintiff's employment with Defendant, Morales subjected Plaintiff to severe and pervasive unwelcome sexual harassment including humiliating and offensive comments, gestures and physical contact of a sexual nature.

15. The almost daily verbal offensive sexual comments included, *inter alia*:

   a. Morales telling Plaintiff that he wanted to touch her;

   b. Morales propositioning Plaintiff, telling Plaintiff that he wanted to have sex with her;

   c. Morales asking Plaintiff about her sex life, including asking her what sexual positions she liked and what kind of underwear she wears;

   b. Morales making comments to Plaintiff such as: " I like the way you look"; "I like to look at you from behind"; "I like your pants;" " I really like the blouse you are wearing"; "I can see your breast, that makes me wet"; telling Plaintiff that he had to go to the rest room to clean himself;

   e. Morales telling Plaintiff that he did not hire her husband because he wanted her all to himself; and

3

    f.  Morales asking Plaintiff to work until 5:00 p.m. instead of 4:30 p.m. because he wanted to "see her more alone".

16. Plaintiff repeatedly told Morales to stop making those comments and  to stop asking about inappropriate things.

17. Plaintiff told Morales that she needed her job, and that she was supporting her family because her husband was unemployed.

18. Plaintiff told Morales that if he did not stop his behavior she would report it to David Masilotti, Jr., known as "DJ", a Management Employee and the Owner's son.

19. In response, Morales scoffed at Plaintiff and told her that "DJ" would not do anything because "DJ" does what his father, owner David Masilotti, Sr., tells him to do.

20. Plaintiff replied that she would complain to the owner, David Masilotti, Sr.

21. Morales told Plaintiff that the owner, David Masilotti, Sr., would not believe her.

22. Morales advised Plaintiff that she would not be the first woman to complain about him, that others had made accusations against him before, but the owner, David Masilotti, Sr., had never believed them.

23 Morales told Plaintiff that a prior employee, Madeline Diaz, had even sent a letter to the owner, David Masilotti, Sr., complaining about Morales' sexually harassing behavior and nothing was done.

24. Morales threatened Plaintiff, telling her that she would lose her job if she complained.

25.     Morales called Plaintiff at home after hours.

26.     In November, 2016, sometime before Thanksgiving, the sexual harassment became physical. Morales physically assaulted Plaintiff. Morales called Plaintiff into his office, pushed her against a wall, tried to kiss her, put his hand inside her pants and touched her vaginal area.

27.     Sometime after the physical assault, Plaintiff went to the office and asked to speak to "Megan", the HR Manager.  Plaintiff was told that "Megan" was not in that day. At the time that Plaintiff sought out "Megan", Plaintiff did not know that she was the CEO and owner, David Masilotti Sr.'s, daughter.

28.     Morales later told Plaintiff that complaining about him to "Megan", the HR Manager, would not do any good, because she was the daughter of the CEO and owner, David Masilotti Sr..

29.     On or about December 20, 2016, Morales physically assaulted Plaintiff again. Morales called Plaintiff into a conference room to deliver a medical appointment slip. Morales then grabbed Plaintiff from behind, unbuttoned her shirt, tried to unbutton her pants, and placed his hand over her mouth.  Morales grabbed Plaintiff breasts and private parts, and pressed her hand against his crotch. Plaintiff started to cry. Morales let Plaintiff go. He told her that if he wanted to fire her he would. Morales' assault left a bruise on her arm.

30.     Plaintiff was her family's sole wage-earner at the time. Plaintiff reasonably feared that if she complained she would be retaliated against. Plaintiff feared that she would not be believed, her complaints would be futile, and she would either lose

5

her job, or her complaints would aggravate the work environment and it would become even more hostile.

31.   On or about December 23, 2016, Morales asked Plaintiff if she had ever "done it", (referring to having sex), in a storage place.  Morales threatened to take Plaintiff to his storage place. He told Plaintiff that he had a perfect spot, he just needed a perfect date and excuse for not being at work.

32.   Plaintiff was afraid that Morales was going to take her somewhere and rape her.

33.   Plaintiff spoke to a co-worker, "Jorge", (believed to be Jorge Aguilera), and told him about the physical assault by Morales on or about December 20, 2016. "Jorge" told her that he had observed Morales getting close to her, and looking at her in an inappropriate way. "Jorge" told Plaintiff that other women had been sexually harassed by Morales. "Jorge"  told Plaintiff that other women had complained about Morales' behavior to the owner, David Masilotti, Sr., before, but he never believed the women, and they were fired.  "Jorge" told Plaintiff that she could go to the Police and report it, or she could just do was Morales says, "because he will make your life miserable at work if you don't".

34.   On or about December 28, 2016 went to the New Castle County Police to file criminal charges against Morales for the sexual assault which occurred on or about December 20, 2016 at Defendant's premises.

35.   On or about December 29, 2016, Plaintiff called HR Manager Megan Masilotti. She was not available. Plaintiff left a message indicating that Morales had touched Plaintiff in a sexually inappropriate way.

36.     On or about December 29, 2016 Plaintiff gave another employee a letter to hand-deliver to HR Manager Megan Masilotti complaining about Morales' sexual harassment.

37.     On December 29, 2016, within approximately three (3) hours of Plaintiff leaving a message for HR Manager Megan Masilotti on her voice-mail, Morales approached Plaintiff and said that he knew she had reported him to the Police.

38.     On the same day, or about December 29, 2016, Plaintiff was called to a meeting with HR Manager Megan Masilotti, David Masilotti, Sr. and Detective Shughart of the New Castle County Police.

39.     Someone in the room acknowledged that there had been "little jokes" about Morales before.  Detective Shughart accused Plaintiff of making a false report and stated that she would consider referring the matter of a false report to the Attorney General's Office for prosecution.

40.     After Detective Shughart and David Masilotti Sr. left the meeting, HR Manager Megan Masilotti told Plaintiff to wait while she checked on something. As Plaintiff waited for Megan Masilotti to return, Plaintiff overheard Megan Masilotti talking to her father, David Masilotti, Sr.. Megan Masilotti said to her father, words to the effect that, "this is your fault". David Masilotti, Sr. responded, "How is it my fault?". Megan Masilotti responded,  "because you knew about this and didn't do anything about it".

41.     Megan returned to the room and told Plaintiff to return to work. Megan did not tell Plaintiff that the matter would be investigated, or that anything else would be

done.

42.     Plaintiff was feeling ill and was permitted to leave work early on December 29,

        2016.

43.     Plaintiff returned to work on December 30, 2016. Morales was there. He had not

        been suspended.

44.     Plaintiff was put in another work space. However, Morales, as General Manager,

        oversaw all of the operations, and he made a point of coming by, standing close to

        Plaintiff, and intimidating her.  Also, Plaintiff's work tasks were the same. She

        would still be required to take completed Circuit Boards to Morales for testing.

45.     On December 20, 2016, Plaintiff went to a break room near the security station for

        lunch. Morales came into the break room. Plaintiff believed he was stalking her.

46.     Plaintiff did not return to work after December 30, 2016. Her fears had been

        realized. Plaintiff's complaints were not believed, they were futile. Plaintiff feared

        being continually sexually harassed by Morales, and possibly raped. Even after

        her complaints, Morales was not suspended or fired; Morales was still able to

        come near her and intimidate her. Defendant did not protect Plaintiff from

        Morales and Defendant did not give any indication that it would protect Plaintiff

        from Morales. Plaintiff felt that she had no choice but to resign.

47.     Upon information and belief, Defendant did not conduct an investigation into

        Plaintiff's complaints until after it received a copy of Plaintiff's Charge of

        Discrimination jointly filed at the Delaware Department of Labor/ Equal

        Employment Opportunity Commission on or about February 2, 2017.

48.     Upon information and belief, even when it did conduct a post-Charge investigation, Defendant never interviewed the Harasser, Morales, as part of its' investigation.

49.     At no time during Plaintiff's employment did Defendant ever conduct any sexual harassment training.

50.     Plaintiff was not the first person to be sexually harassed by Morales at Defendant's site. At least four (4) other women were sexually harassed by Morales.

51.     Upon information and belief, prior to September, 2016, a former employee of Defendant's filed a Sexual Harassment Charge of Discrimination against Tesla alleging sexual harassment by Morales. Upon information and belief, after the Charge was filed, the former employee was threatened by cohorts of Morales.

52.     Upon information and belief, prior to September 2016, Defendant entered into one or more confidential settlements with women based on allegations of sexual harassment by Morales.

53.     Upon information and belief, prior to September, 2016, Defendant's owner, David Masilotti, Sr., knew of Morales' sexually harassing behavior towards women employees.

54.     Upon information and belief, prior to September, 2016, Defendant's HR Manager Megan Masilotti, knew of Morales' sexually harassing behavior towards women employees.

55.     Upon information and belief, prior to September, 2016, Defendant, was advised

by the Police that one or more women had complained about sexual harassment by Morales.

56.    Upon information and belief, prior to September, 2016, Manager "DJ" Masilotti knew of Morales' sexually harassing behavior towards women employees.

57.    Despite management's knowledge of prior sexual harassment complaints against Morales and/or knowledge of Morales' sexually harassing behavior towards women employees, Defendant failed to take appropriate steps to ensure that women in general, and Plaintiff, in particular, would not be subjected to sexual harassment.  As such, Defendant failed to provide an effective complaint mechanism and  Defendant failed to prevent sexual harassment.

58.    Despite management's knowledge of prior sexual harassment complaints against Morales and/or knowledge of Morales' sexually harassing behavior towards women, even after Plaintiff's Complaint, Defendant failed to take appropriate intermediary steps to ensure that  Plaintiff, in particular, would not be subjected to further harassment.  Defendant failed to exercise reasonable care to prevent and promptly correct any harassment.

59.    Morales' should have immediately been suspended on December 29, 2016, the date of Plaintiff's formal complaint, pending a formal investigation.

60.    As a direct and proximate result of the sexual harassment,  Plaintiff has experienced and continues to experience extreme anxiety and emotional distress including lack of sleep and nightmares.

## ADMINISTRATIVE EXHAUSTION

61.     On or about February 2, 2017 Plaintiff jointly filed a Charge of Discrimination

with the Delaware Department of Labor ("DDOL") and the Equal Employment

Opportunity Commission ("EEOC") against Defendant alleging sex

discrimination/sexual harassment and retaliation.

62.     On or about May 31, 2019, the DDOL issued a Reasonable Cause Determination

and Notice of Mandatory Conciliation.  The Reasonable Cause Determination

found that an unlawful employment practice had occurred.  Specifically, the

Reasonable Cause finding concluded that:

a.      Plaintiff was a member of a protected class because of her sex (female);

b.      Plaintiff was subjected to unwelcome verbal and physical contact by her

supervisor, Roberto Morales (General Manager);

c.      Plaintiff was sexually harassed in a verbal and physical manner by Mr.

Morales; Thus, the harassment complained of was based on the statutorily

protected class (sex);

d.      The harassment had the purpose or effect or unreasonably interfering with

Charging Party's work performance and/or creating an intimidating,

hostile, or offensive work environment.

e.      Plaintiff did not unreasonably fail to either take advantage of any

preventive or corrective opportunities provided by Defendant or to avoid

harm otherwise.

f.      Defendant failed to exercise reasonable care to prevent and promptly

correct any harassing behavior.

g.      There is a basis for imputing liability to Defendant.

63.    None of Defendant's Management employees appeared for the Mandatory DDOL

Conciliation Conference.

64.    Plaintiff, through Counsel, requested a Notice of Right to Sue Letter from the

EEOC.

65.    On or about September 13, 2019  the EEOC issued a Notice of Right to Sue

Letter.

66.    Plaintiff's Counsel received a copy of the Notice of Right to Sue Letter by e-mail

on September 13, 2019.

67.    A true and correct copy of the Notice of Right to Sue Letter is attached hereto as

Exhibit "1".


**COUNT I - SEX DISCRIMINATION/SEXUAL HARASSMENT**

68.    Paragraphs 1 through 67 are hereby realleged and incorporated herein by reference

as if fully set forth herein.

69.    Such acts as described above by Defendant, its agents and employees, constitute

unlawful sex discrimination and sexual harassment against Plaintiff in violation of

Title VII, 42 U.S.C. § 2000(e) et. seq. The harassment had the purpose or effect or

unreasonably interfering with Plaintiff's work performance and/or creating an

intimidating, hostile, or offensive work environment.

70.   As a direct and proximate result of Defendant's unlawful discrimination, in the nature of sexual harassment, by Defendant, through its agents and employees, Plaintiff has been injured and has suffered and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, and physical manifestation of anxiety.

## COUNT II - CONSTRUCTIVE DISCHARGE

71.   Paragraphs 1 through 70 are hereby realleged and incorporated herein by reference as if fully set forth herein.

72.   Such acts as described above by Defendant, its agents and employees, created working conditions that were so intolerable, that Plaintiff had no choice but to resign.

73.   A reasonable person in Plaintiff's position would also have felt compelled to resign due to the intolerable working conditions.

74.   As a direct and proximate result of Defendant's constructive discharge, by and through its agents and employees, Plaintiff has been injured and has suffered and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, and physical manifestation of anxiety.

## COUNT III- PUNITIVE DAMAGES

75.   Paragraphs 1 through 74 are hereby realleged and incorporated herein by reference as if fully set forth herein.

76.     Such acts as described above by Defendant, through its Management employees, in failing to prevent and protect Plaintiff from Morales' sexually harassing conduct, especially in light of prior knowledge of Morales' sexually harassing behavior towards female employees, exhibited a reckless indifference to Plaintiff's federally protected rights.

77.     As such, Plaintiff is entitled to punitive damages.


**WHEREFORE**, Plaintiff Rita Serrano Ramirez demands judgment in her favor against Defendant Tesla Industries, Inc. for compensatory damages, damages for emotional distress, damages for pain and suffering, punitive damages, costs of this action, Attorney's fees, expert fees, pre-judgment interest, post-judgment interest, and any other just and equitable relief as this Court deems proper, including an injunction permanently restraining these violations of Title VII and a directive that Defendant take such affirmative action as are necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities.

**KNEPPER & STRATTON**

*Barbara H. Stratton*
Barbara H. Stratton, Esquire
1228 N. King Street
Wilmington, Delaware 19801
(302) 652-7717
Delaware Bar I.D. #:  2785

**BAILEY & EHRENBERG, PPLC**

*William Wilson*
William Wilson, Esquire

14

120 North Church Street
Suite 206
West Chester, Pennsylvania 19380

ATTORNEYS FOR PLAINTIFF

Date:   11/5/19